UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEANNA F. WILL,

        Plaintiff,

  -vs-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION and ORDER**
**No. 1:15-cv-00635(MAT)**

---

## INTRODUCTION

Deanna f. Will ("Plaintiff"), represented by counsel, brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"),[1] denying her applications for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On January 15, 2013, Plaintiff protectively filed an application for SSI, alleging disability beginning January 29, 2012. This claim was denied initially on May 17, 2013. Plaintiff filed a written request for a hearing, which was conducted via videoconference by Administrative Law Judge Jerome Hornblass ("the

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

ALJ") on November 6, 2013. Plaintiff appeared with her attorney at the Social Security Administration ("SSA") office in Jamestown, New York, and testified. The ALJ did not call any witnesses. On February 25, 2014, the ALJ issued an unfavorable decision. (T.17-33).[2] The Appeals Council denied Plaintiff's request for review on May 20, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ fund that Plaintiff had not engaged in substantial gainful activity since January 15, 2013, the application date. (T.22). At step two, the ALJ found that Plaintiff had the following severe impairments: back disorder, asthma, depression, and anxiety disorder.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T.22-23). In making that finding, the ALJ specifically considered Listings 1.04 (disorders of the spine), 3.03 (asthma), and 12.04 (affective disorders). (T.22-24).

The ALJ then assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in the regulations, except that she was limited to simple tasks that did

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

not require working in environments containing respiratory irritants. (T.24-28).

At step four, the ALJ found Plaintiff had no past relevant work. (T.28). At step five, the ALJ determined that, pursuant to Medical-Vocational Rule 202.20, Plaintiff could perform jobs existing in significant numbers in the national economy. (T.28). Accordingly, the ALJ found that Plaintiff has not been under a disability as defined in the Act during the relevant period.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. Internal Inconsistency in ALJ's Decision Requires Remand for Clarification (Plaintiff's Point I)**

Plaintiff argues that there is an inconsistency between the ALJ's RFC finding that she can perform simple tasks, and the following statement in the ALJ's decision: "The treatment notes from North Counseling Center and Lake Shore Behavioral Health do [sic] show the claimant's mental impairments would be severe enough to prevent her from completing simple tasks." (T.23). Plaintiff contends that remand is necessary in order for the ALJ to resolve this alleged inconsistency. The Commissioner counters that the statement in question simply contains a typographical error and that, based on a reading of the ALJ's decision as a whole, the ALJ apparently intended to convey that the treatment notes from North Counseling Center and Lake Shore Behavioral Health do *not* show that her mental impairments would be severe enough to prevent her from performing simple tasks.

As the Commissioner notes, courts in this Circuit have found that where an ALJ's decision contains typographical mistakes, the error can be be harmless if it is obvious from the decision as a whole that the error is ministerial and not substantive. See, e.g., Lopez v. Comm'r of Soc. Sec., No. 08-CV-4787, 2009 WL 2922311, at *12 n. 37 (E.D.N.Y. Sept. 8, 2009) (finding the ALJ's reliance on

a nonexistent Medical Vocational Rule a "typographical mistake and not a substantive error" where there was no ambiguity considering the ALJ's decision as a whole) (citation omitted).

As discussed below, the Court finds that, when read in context with the ALJ's decision in its entirety, the error is typographical—the statement at issue evidently omits the word "not"—and does not create ambiguity requiring remand for clarification. First, in the remainder of the same paragraph in which the erroneous statement appears, the ALJ cited multiple pieces of evidence to the effect that Plaintiff's mental impairments cause only mild restrictions in her ability to perform the work-related functions necessary for unskilled work. The ALJ noted that Dr. Santarpia opined that Plaintiff had only a mild impairment in performing complex tasks independently, and had no limitations in being able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress. (T.23, 220-21). Thus, Dr. Santarpia's opinion does not imply that Plaintiff would be precluded from performing simple tasks; as noted above, it states the opposite.

Moreover, on three separate occasions elsewhere in the decision, the ALJ clearly stated that Plaintiff's mental impairments would not prevent her from performing simple work. For instance, the ALJ stated that "[a]lthough [Plaintiff] has difficulty with concentration and focusing due to her mental

impairments causing difficulty in completing complex tasks, the medical evidence does not show her depression and anxiety are severe enough to prevent her from doing simple tasks." (T.26). The ALJ also stated that "[a]lthough [Plaintiff] has work related functional limitations as a result of her impairments and symptoms, the objective medical evidence discussed above does not show her impairments and symptoms would be severe enough to prevent her from performing at least a simple light job that does not require working in environments containing respiratory irritants." (T.27). Finally, the ALJ stated that it was "[his] conclusion that [Plaintiff] can perform simple light work that does not require working in environments containing respiratory irritants, despite her impairments and symptoms." (T.28).

To counter the Commissioner's argument that the ALJ simply made a typographical error, Plaintiff notes that the mental health records show that despite regular psychiatric visits, Plaintiff continued to pull her eyebrows out due to her trichotillomania. (T.200-06; 280-85). However, Plaintiff does not explain how this condition prevents her from performing simple tasks. To the contrary, Plaintiff's own reported activities during times she was experiencing bouts of trichotillomania, and her otherwise normal mental status examinations, undermine such a claim. For instance, during a March 20, 2013 therapy session with Walter Warriner, NPP, at Cattaraugus County Department of Community Services, Plaintiff reported trichotillomania. However, her mental status examination was largely normal. Plaintiff reported that she socialized with a

"Call of Duty" video-game group, and that her hobbies were playing video games and taking care of her children. (T.275). At her July 24, 2013 visit with NPP Warriner, Plaintiff again reported that she was "still pulling hair," but "sleeps well" and "enjoyed a trip to Fantasy Island [amusement park]" the day prior to the appointment. (T.280). Again, her mental status exam was essentially within normal limits. (T.281). The record thus belies Plaintiff's claim that her trichotillomania prevents her from performing simple work. See, e.g., Smith v. Comm'r of Soc. Sec., 595 F. Supp.2d 236, 238 (W.D.N.Y. 2009) (affirming ALJ's finding that claimant had the RFC to perform unskilled work, based in part on claimant's daily activities including playing video games).

Plaintiff also asserts that her "[m]ental status examinations revealed elevated (or anxious) mood, as well as conceptual disorganization[,]" and that these clinical findings demonstrate that she cannot perform simple tasks. Plaintiff, however, has misstated the record. NPP Warriner in fact wrote that she displayed "a *negligible degree* of conceptual disorganization[.]" (T.281 (emphasis supplied)). Plaintiff also omits to mention that the remainder of NPP Warriner's findings on mental status examination were all within normal limits and do not provide evidence that Plaintiff lacks the ability to perform simple tasks. For instance, at the same time he noted "a negligible degree of conceptual disorganization," NPP Warriner also found Plaintiff alert and well-oriented in all spheres, with good insight and judgment; she had good eye contact, with an affect appropriate to speech-content; her

speech was logical, coherent, and goal-directed, and both recent and remote memory were intact; she had no significant preoccupations in her thought content, and was not having any hallucinations; she was reflective and able to resist urges; and she was able to attend and maintain focus. (E.g., T.281). There is more than substantial evidence that the Plaintiff's symptoms of elevated (or anxious) mood and "negligible degree of conceptual disorganization" do not does not prevent her from performing simple tasks, especially given that the remainder of her mental status examinations were essentially normal. Reading the questionable statement in context, and viewing the record as a whole, it was merely a typographical error that does not detract from the validity of the ALJ's decision. See, e.g., Van Valkenberg ex. rel. B.G. v. Astrue, No. 1:08-cv-959, 2010 WL 2400455, at *13 (N.D.N.Y. May 27, 2010) (court will find typographical error to be harmless if it is obvious from the opinion as a whole that the error is typographical and not substantive); Wearen v. Colvin, No. 13-CV-6189P, 2015 WL 1038236, at *13-14 (W.D.N.Y. Mar. 10, 2015) (finding the ALJ's statement that claimant was unable to walk no more than ten feet at a time—rather than ten minutes at a time—was a typographical error that did not require remand).

**II. Erroneous Credibility Assessment (Plaintiff's Point II)**

Plaintiff asserts that the ALJ's credibility analysis consisted of two indefensible lines of reasoning, namely, that her ability to raise four children as a single mother means that she is not precluded from substantial gainful employment, and that the

fact her medications were not "very strong" implied that her symptoms and limitations were not that severe. The ALJ responds that "subjective assertions of pain *alone* cannot ground a finding of disability" Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (emphasis in original; citation omitted).

While the ALJ "is required to take the claimant's reports of pain and other limitations into account," id. (citations omitted), he "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Id. (citation omitted). If the claimant's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The ALJ must explain his credibility finding "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1045 (2d Cir. 1984)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely credible for the reasons explained in [the] decision." (T.25). Plaintiff claims that the ALJ advanced two arguments in support of his credibility finding that were improper.

Plaintiff first faults the ALJ for citing the conservative care she received for her physical impairments; he noted that she "has never been hospitalized or had surgery for any medical issues, and she does not use very strong medications." (T.27). It was not improper for the ALJ to consider that Plaintiff had received conservative care for her physical ailments. See, e.g., Kirk v. Colvin, No. 12-CV-6075-FPG, 2014 WL 2214138, at *11 (W.D.N.Y. May 28, 2014) (evidence that claimant's "treatment was relatively minimal and non-invasive" was supportive of ALJ's credibility finding). Plaintiff counters that the ALJ erroneously failed to take into account her treating source's indication that Plaintiff "could not tolerate" opiate pain medication due to her history of gastroparesis, and could not even tolerate Celebrex. (T.304-05). The treating source to whom she refers, Family Nurse Practitioner Elizabeth Printup ("FNP Printup") actually observed that Plaintiff "does have a [history] of gastroparesis so opiate use *should be limited*." (T.304 (emphasis supplied)). Plaintiff correctly notes that she discontinued Celebrex because her "stomach left like she swallowed glass," but she did report some pain relief from

Flexeril. (T.304). Subsequent appointments indicate that NPP Printup trialed Plaintiff on topical treatments such as a TENS unit, Voltaren gel (diclofenac, a non-steroidal anti-inflammatory drug ("NSAID"), and Daypro 600 (oxaprozin, an NSAID). The ALJ also considered the objective medical evidence, including diagnostic imaging, to find Plaintiff's physical limitations did not preclude her from working at a light exertional job. NPP Printup ordered an MRI of Plaintiff's thoracic spine which was performed on July 16, 2013. The MRI revealed chronic height loss of T6 which resulted in kyphotic curvature of the thoracic spine. The anterior aspect of the thoracic cord was directly posterior to the vertebral body at this level and appeared to be impinged at its ventral aspect at the level of T6-7. There was a small central disc protrusion, but the posterior thecal sac at this level was widely patent, and there was no significant stenosis noted. (T.267).

Plaintiff also claims that the ALJ placed undue weight on her ability to care for her children, arguing that she testified that required her oldest child to help her care for her other children and that she relied on her children to do household chores. Plaintiff did make inconsistent statements about her ability to care for her children elsewhere in the record. For instance, during the consultative psychological evaluation, Plaintiff told Dr. Santarpia stated she could cook, clean, do laundry, shop, and manage her own money. (T.220). Dr. Santarpia also indicated in her report that Plaintiff was the primary caregiver for her four children. (Id.). Plaintiff told NPP Warriner that her leisure

activities included "chasing her children." It was not improper for the ALJ consider Plaintiff's childcare activities as evidence regarding the degree of her limitations. See Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ properly found claimant's testimony about his limitations was not fully credible, in light of, inter alia, claimant's ability to care for his one-year-old child, which included changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer). Relatedly, Plaintiff contends that the ALJ discriminated against her on the basis that she is a single mother, because he "explicitly mentioned [her] status as a single mother in other contexts" besides discussing her activities of daily living. (Plaintiff's Reply at 5). The Court agrees that it was highly improper for the ALJ to state that Plaintiff "takes care of four young children by herself, which also shows she has the capacity to work." (T.27). However, the Court finds that this error is not fatal because the remainder of the factors on which the ALJ relied were buttressed by substantial evidence in the record. The fact that the ALJ used the word "also" in the objectionable statement quoted above indicates that he did not rely exclusively or even primarily on Plaintiff's ability to care for her children. "If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" Wojciechowski v. Colvin, 967 F. Supp.2d 602,

605 (N.D.N.Y. 2013) (quoting Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

Also relative to her subjective complaints about being able to perform activities of daily living, Plaintiff testified that she had trouble walking distances, bending, and performing most other types of physical activity. (T.51). The record, however, does not support these assertions. At the consultative physical evaluation, Dr. Donna Miller observed that Plaintiff had a normal gait and stance, did not need an assistive device, needed no help changing her clothes or getting up on the table, rose from chair without difficulty, had negative straight leg raising test results bilaterally, and full strength in her upper and lower extremities. (T.224-26). Significantly, Dr. Miller observed at several points during the examination that Plaintiff did not appear to be putting forth full effort when asked to do several physical tests (such as squatting and lumbar spine flexion), and she declined to do lateral flexion, extension or rotation, or walk on her heels and toes. Dr. Miller opined that Plaintiff had only a mild limitation for *heavy* lifting, bending, and carrying. (T.226).

With regard to her mental impairments, although Plaintiff testified that she had panic attacks two to three times a day (T.57), the objective medical evidence contains no support of this claim. For example, on April 17, 2013, consultative psychologist Dr. Santarpia noted that Plaintiff did not report panic attacks or manic symptoms during her evaluation. (T.219 ("Panic attacks: Non reported. Manic symptomatology: None reported. Thought Disorder:

None reported."). At therapy appointments on March 20, 2013; July 24, 2013; and September 18, 2013, while NPP Warriner checked the box next to "anxiety" under psychiatric symptoms, he did not check "panic" or indicate any other symptoms indicative of panic attacks. (E.g., T.271, 280, 283). On May 15, 2013, NPP Warriner did not check the box next to any psychiatric symptoms, including "anxiety." (T.277). At the consultative evaluation, Dr. Santarpia observed Plaintiff's attention and concentration were only "mildly impaired due to some nervousness;" Plaintiff informed Dr. Santarpia that "[m]ath makes [her] nervous." (T.220). Dr. Santarpia further found Plaintiff could perform simple tasks independently, relate adequately to others, and appropriately deal with stress within normal limits. (T.220-21). Dr. Santarpia opined that, although Plaintiff had psychiatric problems, they did not appear to be significant enough to interfere with her ability to function on a daily basis. (T.221).

While the ALJ did not directly address all of the factors listed in 20 C.F.R. § 416.929(c)(3), the ALJ's discussion of the evidence in the record permits the Court to discern the rationale for his credibility determination, which is supported by substantial evidence. See, e.g., Lowry ex rel. J.B. v. Astrue, No. 09-CV-458 GTS/VEB, 2010 WL 6404416, at *10 (N.D.N.Y. June 30, 2010) ("[T]he ALJ's credibility assessment is not supported by a detailed discussion of his reasons for finding the statements from the various parties not "supported by the longitudinal medical record." However, given the medical records discussed above (in

particular, the hospital reports and treatment notes generally describing the symptoms as mild or moderate) and the assessment of the State Agency review consultants, the ALJ's rationale for discounting the subjective evidence can reasonably be inferred from his decision. Although a more detailed discussion would have been preferable, this is not a case in which the Court cannot determine how the ALJ reached his findings regarding credibility."), report and recommendation adopted, No. 09-CV-0458-GTS-VEB, 2011 WL 1239884 (N.D.N.Y. Mar. 30, 2011), aff'd sub nom. Lowry v. Astrue, 474 F. App'x 801 (2d Cir. 2012).

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is free of harmful legal error and is supported by substantial evidence. Therefore, it is affirmed. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 23, 2018
Rochester, New York.